## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | **PLAINTIFF** |
| v. | CIVIL ACTION NO. 2:17-CV-126-KS-MTP |
| WESLEY HEALTH SYSTEM, LLC | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Defendant's Motion for Summary Judgment [73].

### I. BACKGROUND

Lois Cooper was a nurse in the Transitional Care Unit ("TCU") at Wesley Medical Center in Hattiesburg, Mississippi. In April 2014, she injured her shoulder and took leave. In July 2014, Cooper's doctor cleared her to return to work with restrictions. Defendant determined that Cooper could not safely return to work in the TCU because lifting and pushing patients was an "essential function" of her job. So, Defendant advised Cooper to apply for a vacant position in its network for which she was qualified. Cooper applied for one such position, but Defendant hired another candidate. Defendant finally terminated Cooper's employment on August 8, 2014.

Cooper filed a charge of discrimination with the EEOC, alleging violations of Title I of the Americans with Disabilities Act ("ADA").[1] The EEOC determined that

---

[1] 42 U.S.C. § 12102, *et seq.*

there was reasonable cause to believe that Defendant had violated the ADA and invited Defendant to informal negotiations to address the alleged unlawful employment practices. Negotiations failed, and the EEOC filed this lawsuit against Defendant.

## II. DISCUSSION

Defendant argues that the Court should grant summary judgment as to Plaintiff's claim that Defendant failed to accommodate Cooper when she sought to return to work after taking leave.[2] Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is

---

[2] Defendant argued in briefing that Plaintiff only asserted a single claim – that it failed to accommodate Cooper when she sought to return to work. Rebuttal at 9, *EEOC v. Wesley Health Sys., LLC*, No. 2:17-CV-126-KS-MTP (S.D. Miss. Oct. 4, 2018), ECF No. 88. Defendant's description of the pleadings is inaccurate. Plaintiff asserted three theories of liability: discriminatory treatment in violation of 42 U.S.C. § 12112(a), failure to accommodate in violation of 42 U.S.C. § 12112(b)(5)(A), and denial of employment opportunities in violation of 42 U.S.C. § 12112(b)(5)(B). Complaint at 4, *EEOC v. Wesley Health Sys., LLC*, No. 2:17-CV-126-KS-MTP (S.D. Miss. July 25, 2017), ECF No. 1. Plaintiff also alleged three actions/inactions by Defendant that constituted said violations: refusal to engage in the interactive process, failure to reasonably accommodate Cooper's disability, and termination. *Id.* at 5. The Court clarifies this issue because the parties argued past one another in briefing, neither squarely addressing the other's arguments. Moreover, in addressing the present motion, the Court will only assess Plaintiff's failure-to-accommodate claim because that is the only claim Defendant addressed.

sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

"Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability." *Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017). To prove a failure-to-accommodate claim, a plaintiff must show that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations.'" *Id.* (quoting *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)).

### A. *Whether Lifting Was an Essential Function*

First, Defendant argues that Plaintiff cannot establish that Cooper was a "qualified individual" under the ADA because the evidence demonstrates that she could not perform the "essential functions" of her job with or without a reasonable

3

accommodation. Specifically, Defendant contends that Cooper could not lift or carry at least 50 pounds or push up to 300 pounds. In response, Plaintiff argues that these physical requirements were not actually "essential functions" of her job.

Under the ADA, a "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Fact-finders must determine whether a function is 'essential' on a case-by-case basis." *Credeur*, 860 F.3d at 792 (quoting *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 698 (5th Cir. 2014)). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term . . . does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). The Court must give "consideration . . . to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . , this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

But "courts should not give blind deference to an employer's judgment, but should instead evaluate the employer's words along with its policies and practices." *Credeur*, 860 F.3d at 794. EEOC regulations provide a non-exhaustive list of factors the Court should consider:

 (i)  The employer's judgment as to which functions are essential.

 (ii)  Written job descriptions prepared before advertising or interviewing job applicants for the job;

 (iii)  The amount of time spent on the job performing the function;

> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

Cooper's job description provided that she was "frequently" – 34-66% of her time at work – required to lift and carry 50 pounds or more, and to push up to 300 pounds. Exhibit G at 2, *EEOC v. Wesley Health Sys., LLC*, No. 2:17cv126-KS-MTP (S.D. Miss. Sept. 27, 2018), ECF No. 80-7. However, Defendant's Safety Guidelines also provided that staff should "[a]sk for assistance when the load is too large or too heavy," apparently contemplating that staff would seek and receive assistance when lifting patients. Exhibit V at 2, *EEOC v. Wesley Health Sys., LLC*, No. 2:17-CV-126-KS-MTP (S.D. Miss. Sept. 27, 2018), ECF No. 80-22.

Cooper testified that nurses in the TCU never moved patients alone. Exhibit A at 19, *EEOC v. Wesley Health Sys., LLC*, No. 2:17-CV-126-KS-MTP (S.D. Miss. Aug. 30, 2018), ECF No. 73-1. She said: "You always got help. You never lifted alone because . . . you could injure the patient or you could injure yourself." *Id.* She later elaborated: "[I]f you needed help with them, turning them, positioning them, or walking them to the – or getting them on the bedside commode or the bathroom, you would go get help. You did not do it alone. You did the buddy system." *Id.* at 26. She said there was always enough staff to get another person to help, and that she had never had to

5

support the full weight of a patient on her own. *Id.* Cooper also described devices for lifting, moving, and/or transferring patients: chair lifts and bed lifts, *id.* at 27-29, and she testified that she did not have to use her own strength to get a patient into these devices. *Id.* at 28. Addressing the job description, Cooper affirmed that she was sometimes required to lift and/or carry 50+ pounds, but she could not "say if it was frequent" or not. *Id.* at 31, 35. She also acknowledged that "emergency or crisis situations" could arise, but she could "call rapid response and get additional assistance up to assist." *Id.* at 34.

Howard Franklin, the Administrator of the TCU, confirmed that staff in the TCU sometimes used a "buddy system" to transfer patients, depending on the situation. Exhibit B at 10, *EEOC v. Wesley Health Sys., LLC*, No. 2:17-CV-126-KS-MTP (S.D. Miss. Aug. 30, 2018), ECF No. 73-2. But he elaborated: "The job is very physically demanding. . . . [Y]ou can never tell what's going to happen when it comes to transferring and moving these patients." *Id.* at 36. He said it "can't be guaranteed" that assistance from other staff will be available. *Id.* at 37. But according to him, "lifting is going to be part of the process of doing [a registered nurse's] duties throughout a 12-hour shift." *Id.* at 40. He testified: "I witness everyday RN's lifting and moving patients." *Id.* He confirmed that other staff sometimes help nurses lift and transfer patients. *Id.* at 40, 43. He also confirmed the availability of devices to assist in lifting and moving patients. *Id.* at 40-41, 44.

Melissa Lott, Defendant's Director of Nursing in the TCU, testified that no one

working in the TCU "can lift a patient." Exhibit H at 25, *EEOC v. Wesley Health Sys., LLC*, No. 2:17-CV-126-KS-MTP (S.D. Miss. Sept. 27, 2018), ECF No. 80-8. She said: "You cannot lift a patient. You can assist the patient to the side of the bed and assist them up if they are ambulatory, but you cannot lift." *Id.* She described devices that nurses use to lift patients, *id.* at 27-30, and she testified that nurses in the TCU always get assistance when moving patients. *Id.* at 44. However, she stated that a nurse still should be able to move patients on her own, in case others were not available to assist. *Id.* at 44-45. Finally, she directly testified that nurses in the TCU are not required to frequently lift more than fifty pounds. *Id.* at 30.

On summary judgment, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. Plaintiff presented direct testimony from Cooper and Lott indicating that nurses in the TCU always seek and receive assistance in lifting patients, and that they are not frequently required to lift more than fifty pounds. Moreover, the record contains testimony about devices nurses use to move and lift patients. This is sufficient to create a genuine dispute of material fact as to whether the lifting/pushing requirements were essential functions of Cooper's job. *See LHC Group*, 773 F.3d at 698 (where record contained evidence that traveling was not as prominent a part of duties as job description suggested, there was genuine dispute of material fact as to whether driving was an essential function).

7

## B. *Whether Defendant Offered a Reasonable Accommodation*

Next, Defendant argues that Plaintiff has no evidence that it failed to offer Cooper a reasonable accommodation. A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9); *see also* 29 C.F.R. § 1630.2(o)(2)(ii). The term may also include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position . . . ." 29 C.F.R. § 1630.2(o)(1)(ii). But the ADA "does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *LHC Group*, 773 F.3d at 698.

Defendant argues that it accommodated Cooper by assisting her in identifying and applying for an available position that did not require heavy lifting. Plaintiff argues, among other things, that Defendant could have allowed her to lift with assistance. As noted above, the record contains evidence that nurses in the TCU always seek and receive assistance in lifting patients, that they are not frequently required to lift more than fifty pounds, and that nurses in the TCU use devices to help them move and lift patients. Both Cooper and Lott testified that nurses always get assistance when moving or lifting patients. If it is, in fact, the common practice in the TCU for

nurses to receive assistance when lifting or moving patients, then Cooper's proposal that she receive such assistance would have been a reasonable accommodation.

Additionally, Plaintiff has presented evidence from which a jury could reasonably infer that Defendant did not engage in the interactive process in good faith. "An employee's request for accommodation triggers an obligation on behalf of the employer to engage with good faith in an interactive process to identify an appropriate accommodation." *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 318 (5th Cir. 2016) (citing *Griffin v. UPS*, 661 F.3d 216, 224 (5th Cir. 2011). "An employer is liable when its unwillingness to participate in the process leads to a failure to reasonably accommodate." *Id.* But "an employer that demonstrates good faith efforts to engage in the interactive process and to make a reasonable accommodation is shielded from liability." *Id.*

Cooper was injured in April 2014 and she took leave until July 2014. On July 15, 2014, Cooper attempted to return to work, but Defendant would not permit her to do so because of lifting restrictions in the latest report from Cooper's doctor. Defendant officially terminated Cooper's employment on August 8, 2014, after it rejected her application for another position. However, on June 24, 2014 – three weeks before Defendant even knew about Cooper's restrictions – Melissa Lott, the TCU Director of Nursing, sent an e-mail to Phebe McKay, the Chief Nursing Officer. Exhibit Q to Response at 2, *EEOC v. Wesley Health Sys., LLC*, No. 2:17-CV-126-KS-MTP (S.D. Miss. Sept. 27, 2018), ECF No. 80-17. According to Lott, Terry Trigg, the HR Director, "told

9

us to go ahead and put in a rec to replace [Cooper]." *Id.* Lott said:

> We are doing it by the book with Terry's help, but this is a nurse [we] would rather not have back. She says she is coming back with restrictions. That's good because she can't work with restrictions, so just FYI, her FMLA will be up next week, so just wanted you to be aware if you see TCU night nurse position come across. We really need it filled. Again, we are going to follow Terry's lead, but want to be able to hire ASAP when all is settled.

*Id.* At her deposition, Lott admitted that she did not want Cooper to come back. Exhibit C to Motion for Summary Judgment at 19, *EEOC v. Wesley Health Sys., LLC*, No. 2:17-CV-126-KS-MTP (S.D. Miss. Aug. 30, 2018), ECF No. 73-3. Lott testified: "[Cooper] is a chronic complainer. It's hard to come to work when you have a nurse that constantly complains about her duties as a nurse." *Id.* A jury could reasonably infer from this evidence that Defendant never intended to accommodate or retain Cooper, and that it used her condition as excuse to get rid of her.[3]

### III. CONCLUSION

For these reasons, the Court **denies** Defendant's Motion for Summary Judgment [73].

---

[3]*See Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended."); *Liner v. Hospital Service Dist. No. 1 of Jefferson Parish*, 230 F. App'x 361, 364 (5th Cir. 2007) (jury could reasonably infer that employer did not make good faith effort to reasonably accommodate employee where it merely told him to apply for other jobs that he may or may not get, and did not work with employee to identify a vacant position for a transfer).

SO ORDERED AND ADJUDGED this 14th day of November, 2018.

                                    /s/   Keith Starrett
                                 KEITH STARRETT
                                 UNITED STATES DISTRICT JUDGE